THE GLIDE.

ERROR TO THE SUPERIOR COURT OF THE STATE OF MASSACHUSETTS.

No. 39. Argued May 1, 1896.—Decided May 24, 1897.

The enforcement *in rem* of the lien upon a vessel, created by the Public Statutes of Massachusetts, c. 192, §§ 14–19, for repairs and supplies in her home port, is exclusively within the admiralty jurisdiction of the courts of the United States.

THIS was a petition to the Superior Court of the county of Suffolk and State of Massachusetts, under section 17 of chapter 192 of the Public Statutes of Massachusetts (the material provisions of which are copied in the margin[1]) by the Atlantic

———————

[1] SECT. 14. When by virtue of a contract, expressed or implied, with the owners of a vessel, or with the agents, contractors or sub-contractors of such owners, or with any of them, or with a person who has been employed to construct, repair or launch a vessel, or to assist therein, money is due for labor performed, materials used, or labor and materials furnished in the construction, launching or repairs of, or for constructing the launching ways for, or for provisions, stores or other articles furnished for or on account of such vessel in this Commonwealth, the person to whom such money

Works, a corporation established by the laws of that State and having its usual place of business at Boston in that county, to enforce a lien upon the tugboat Glide, whose home port was Boston, for labor performed and materials furnished in

---

is due shall have a lien upon the vessel, her tackle, apparel and furniture, to secure the payment of such debt, and such lien shall be preferred to all others on such vessel, except that for mariners' wages, and shall continue until the debt is satisfied.

SECT. 15. Such lien shall be dissolved unless the person claiming the same files, within four days from the time when the vessel departs from the port at which she was when the debt was contracted, in the office of the clerk of the city or town within which the vessel was at such time, a statement, subscribed and sworn to by him, or by some person in his behalf, giving a just and true account of the demand claimed to be due him, with all just credits, and also the name of the person with whom the contract was made, the name of the owner of the vessel, if known, and the name of the vessel, or a description thereof sufficient for identification; which statement shall be recorded by such clerk in a book kept by him for that purpose, and for such recording the clerk shall receive the same fees as for recording mortgages of equal length.

SECT. 16. If the vessel is partly constructed in one place and partly in another, either place shall be deemed the port at which she was when the debt was contracted, within the meaning of this chapter; and the validity of the lien shall not be affected by any inaccuracy in the description of the vessel, if she can be recognized thereby, nor by any inaccuracy in stating the amount due for labor or materials, unless it appears that the person filing the statement has wilfully and knowingly claimed more than is due.

SECT. 17. Such lien may be enforced by petition to the Superior Court for the county where the vessel was at the time when the debt was contracted, or in which she is at the time of instituting proceedings. The petition may be entered in court, or filed in the clerk's office in vacation, or may be inserted in a writ of original summons with an order of attachment, and served, returned and entered like other civil actions; and the subsequent proceedings for enforcing the lien shall, except as hereinafter provided, be as prescribed in chapter one hundred and ninety-one for enforcing liens on buildings and land, so far as the provisions of said chapter are applicable. At the time of entering or filing the petition, a process of attachment against such vessel, her tackle, apparel and furniture, shall issue, and continue in force, or may be dissolved like attachments in civil cases, but such dissolution shall not dissolve the lien.

SECT. 18. The petition shall contain a brief statement of the labor, materials or work done or furnished, or of the stores, provisions or other articles furnished, and of the amount due therefor, with a description of the vessel subject to the lien, and all other material facts and circum-

repairing her at that port, under a contract between the petitioner and Jonathan Chase, one of her owners, all of whom resided in Boston and were named in the petition.

Upon the filing of the petition, the court issued a writ commanding the sheriff to attach the vessel and to summon her owners to answer. The vessel was attached accordingly; and her owners appeared, and moved to dismiss the petition, for want of jurisdiction, because the subject-matter was a matter of admiralty and maritime jurisdiction, and therefore within the exclusive jurisdiction of the courts of the United States. The court granted the motion, and dismissed the petition. The petitioner appealed to the Supreme Judicial Court of the State, the majority of which held that the state court had jurisdiction of the proceedings under the statute, and therefore reversed the order dismissing the petition. 157 Mass. 525.

The respondents thereupon filed an answer, without waiving their motion to dismiss; and at the trial requested the court to rule that it had no jurisdiction, for the reason stated in that motion. But the Superior Court ruled that it had jurisdiction, rendered judgment for the petitioner, and ordered a sale of the vessel in accordance with the statute; and exceptions to the ruling were overruled by the Supreme Judicial Court. 159 Mass. 60. The respondents sued out this writ of error addressed to the Superior Court in which the record remained.

*Mr. Edward E. Blodgett* for plaintiffs in error. *Mr. Eugene P. Carver* was on his brief.

*Mr. Ralph W. Foster* for defendants in error. *Mr. Joshua H. Millett* was on his brief.

stances, and shall pray that the vessel may be sold and the proceeds of the sale applied to the discharge of the demand.

SECT. 19. Any number of persons having such liens upon the same vessel may join in a petition to enforce the same; and the same proceedings shall be had in regard to the respective rights of each petitioner, and the respondent may defend as to each petitioner, in the same manner as if they had severally petitioned for their individual liens.

MR. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

The question in this case is whether the lien given by a statute of Massachusetts for repairs made upon a vessel in her home port, under a contract with her owners or their agent, may be enforced against her by petition in a court of the State, as provided in that statute, or can be enforced only in an admiralty court of the United States. The diverse inferences drawn from the previous judgments of this court, in the careful opinions of the Supreme Judicial Court of Massachusetts and of the dissenting judges in the case at bar, have induced us to state with some fulness the reasons and authorities which have influenced our conclusion.

The most convenient way of tracing the development of the law upon this subject will be to consider the principal decisions of this court in chronological order, first referring to the provisions of the Constitution and statutes of the United States which lie at the foundation of the whole matter.

By the Constitution of the United States, art. 3, sect. 2, "the judicial power shall extend" "to all cases of admiralty and maritime jurisdiction." And by provisions, still in force, of the Judiciary Act of 1789, the District Courts of the United States "shall have, exclusively of the courts of the several States," "original cognizance of all civil causes of admiralty and maritime jurisdiction," "saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it." Act of September 24, 1789, c. 20, § 9; 1 Stat. 76; Rev. Stat. § 563, cl. 8; § 711, cl. 3.

The leading case in this court upon the subject of admiralty jurisdiction over suits by material men is *The General Smith*, decided at February term 1819, in which a decree of the Circuit Court of the United States for the District of Maryland, sustaining a libel *in rem* filed in the District Court for supplies furnished to a ship in Baltimore, her home port, was reversed by this court, for the reasons stated in its opinion delivered by Mr. Justice Story, as follows:

"No doubt is entertained by this court, that the admiralty

rightfully possesses a general jurisdiction in cases of material men; and if this had been a suit *in personam*, there would not have been any hesitation in sustaining the jurisdiction of the District Court. Where, however, the proceeding is *in rem* to enforce a specific lien, it is incumbent upon those, who seek the aid of the court, to establish the existence of such lien in the particular case. Where repairs have been made, or necessaries have been furnished to a foreign ship, or to a ship in a port of the State to which she does not belong, the general maritime law, following the civil law, gives the party a lien on the ship itself for his security; and he may well maintain a suit *in rem* in the admiralty to enforce his right. But in respect to repairs and necessaries in the port or State to which the ship belongs, the case is governed altogether by the municipal law of that State; and no lien is implied, unless it is recognized by that law. Now, it has been long settled, whether originally upon the soundest principles it is now too late to inquire, that by the common law, which is the law of Maryland, material men and mechanics furnishing repairs to a domestic ship, have no particular lien upon the ship itself for the recovery of their demands. A shipwright, indeed, who has taken a ship into his own possession to repair it, is not bound to part with the possession until he is paid for the repairs, any more than any other artificer. But if he has once parted with the possession, or has worked upon it without taking possession, he is not deemed a privileged creditor, having any claim upon the ship itself. Without, therefore, entering into a discussion of the particular circumstances of this case, we are of opinion, that there was not, by the principles of law, any lien upon the ship; and, consequently, the decree of the Circuit Court must be reversed." 4 Wheat. 438, 443.

The law there stated, as to repairs or supplies in a foreign port, has been since constantly recognized, and never doubted. *The St. Jago de Cuba*, 9 Wheat. 409, 417; *The Virgin*, 8 Pet. 538, 550; *The Laura*, 19 How. 22, 28; *The Grapeshot*, 9 Wall. 129, 136; *The Lulu*, 10 Wall. 192; *The Kalorama*, 10 Wall. 204; *The Patapsco*, 13 Wall. 329; *The Emily Souder*, 17 Wall. 666; *The Kate*, 164 U. S. 458, 466.

The only point directly adjudged in *The General Smith* was that there was no lien for repairs or supplies in the home port, which could be enforced *in rem* in admiralty, unless such a lien was recognized by the local law of the State. But the opinion clearly implied that, if so recognized, the lien could be enforced *in rem* in a court of the United States sitting in admiralty.

Accordingly, in the case of *The Planter*, at January term 1833, it was decided that a lien upon a vessel, given by the local law, for repairs in her home port, could be enforced by suit *in rem* in admiralty in the District Court of the United States. Mr. Justice Thompson, delivering the unanimous opinion of the court, said: "The proceeding is *in rem* against a steamboat, for materials found and work performed in repairing the vessel in the port of New Orleans, as is alleged in the libel, under a contract entered into between the parties for that purpose. It is therefore a maritime contract; and if the service was to be performed in a place within the jurisdiction of the admiralty, and the lien given by the local law of the State of Louisiana, it will bring the case within the jurisdiction of the court. By the Civil Code of Louisiana, art. 2748, workmen employed in the construction or repair of ships and boats enjoy the privilege established by the code, without being bound to reduce their contracts to writing, whatever may be their amount; but this privilege ceases if they have allowed the ship or boat to depart without exercising their right. The state law, therefore, gives a lien in cases like the present." He then referred to the case of *The General Smith*, as having "decided that the jurisdiction of the admiralty in such cases, where the repairs are upon a domestic vessel, depends upon the local law of the State"; and, after substantially repeating part of the opinion of Mr. Justice Story, above quoted, ending with the statement that, for repairs or supplies of a ship in her home port, no lien is implied, unless recognized by local law, he added: "But if the local law gives the lien, it may be enforced in the admiralty." 7 Pet. 324, 341.

The principle of the decision in the case of *The Planter* was stated by Mr. Justice Story, at January term 1837, as

follows: "In that case, the repairs of the vessel for which the state laws created a lien, were made at New Orleans, on tide waters. The contract was treated as a maritime contract; and the lien under the state laws was enforced in the admiralty, upon the ground that the court, under such circumstances, had jurisdiction of the contract as maritime; and then the lien, being attached to it, might be enforced according to the mode of administering remedies in the admiralty. The local laws can never confer jurisdiction on the courts of the United States. They can only furnish rules to ascertain the rights of parties; and thus assist in the administration of the proper remedies, where the jurisdiction is vested by the laws of the United States." *The Orleans*, 11 Pet. 175, 184. The libel against the Orleans was dismissed upon the ground that the vessel was not engaged in maritime trade or navigation, and that the admiralty had no jurisdiction of the claims made by a part-owner and by the master.

In the case of *The Yankee Blade*, at December term 1856, the nature of a maritime lien was clearly and exactly defined by Mr. Justice Grier, speaking for this court, as follows: "The maritime 'privilege' or lien is adopted from the civil law, and imports a tacit hypothecation of the subject of it. It is a '*jus in re*,' without actual possession or any right of possession. It accompanies the property into the hands of a *bona fide* purchaser. It can be executed and divested only by a proceeding *in rem*. This sort of proceeding against personal property is unknown to the common law, and is peculiar to the process of courts of admiralty. The foreign and other attachments of property in the state courts, though by analogy loosely termed proceedings *in rem*, are evidently not within the category." 19 How. 82, 89.

The question of the extent of the admiralty jurisdiction of the courts of the United States over cases like that now before the court became at one time entangled in the question of the effect of the regulation of pleading and procedure in admiralty by this court under the power conferred upon it by the acts of Congress of May 8, 1792, c. 36, § 2, and August 23, 1842, c. 188, § 6. 1 Stat. 276; 5 Stat. 518.

The twelfth of the "Rules of Practice of the Courts of the United States in Causes of Admiralty and Maritime Jurisdiction on the Instance side of the Court — in pursuance of the Act of the 23d of August, 1842, c. 188" — promulgated by this court at December term 1844, to take effect September 1, 1845, was as follows:

"In all suits by material men for supplies or repairs or other necessaries for a foreign ship or for a ship in a foreign port, the libellant may proceed against the ship and freight *in rem*, or against the master or the owner alone *in personam*. And the like proceeding *in rem* shall apply to cases of domestic ships, where by the local law a lien is given to material men for supplies, repairs or other necessaries." 3 How. iii, vi, xiv.

The last clause of that rule was in accord with the previous judgments of this court as to such proceedings *in rem* in the cases of *The General Smith*, *The Planter* and *The Orleans*, above cited.

At December term 1858, this court made an order, to take effect May 1, 1859, by which Rule 12 was repealed, and a new rule substituted in its place, differing from it only in making the last clause read as follows: "And the like proceeding *in personam*, but not *in rem*, shall apply to cases of domestic ships, for supplies, repairs or other necessaries." 21 How. iv.

The effect of that change in the rule was that where the only right created by local statutes was a lien upon the ship, *jus in re*, without in any way affecting personal liability, this new right in the thing could not be enforced in admiralty *in rem*, but only *in personam ;* and that much difficulty and embarrassment were thereby created in proceedings in admiralty, which were not wholly removed by the explanations, in succeeding opinions of this court, of the purpose of the change.

In the case of *The Goliah*, at December term 1858, decrees of the Circuit and District Courts of the United States for the District of California, sustaining a libel *in rem* by the assignee of a claim for coal furnished to a vessel at Sacramento, her home port, for which claim a lien existed under the statutes

of California, were reversed by this court and the libel ordered to be dismissed. The principal reason assigned was that the vessel was engaged in the business of navigation and trade in the Sacramento River, in the purely internal commerce of the State, not within the power of Congress to regulate, and therefore not subject to the admiralty jurisdiction. Mr. Justice Nelson, in delivering the opinion, suggested this additional reason : " We have at this term amended the 12th rule of the admiralty, so as to take from the District Courts the right of proceeding *in rem* against a domestic vessel for supplies and repairs, which had been assumed upon the authority of a lien given by state laws, it being conceded that no such lien existed according to the admiralty law, thereby correcting an error which had its origin in this court in the case of *The General Smith*," " applied and enforced in the case of " *The Planter*, " and afterwards partially corrected in the case of " *The Orleans.* " We have determined to leave all these liens depending upon state laws, and not arising out of the maritime contract, to be enforced by the state courts." 21 How. 248, 250, 251. It appears, by the report and by the briefs on file, that the question of jurisdiction was not argued by counsel ; and by the records and docket of this court, that the case was decided by this court February 7, 1859, nearly three months before the rule of 1858 took effect, and in the District and Circuit Courts about three years before.

But that decision, in so far as concerned its principal ground, was expressly overruled in *The Belfast*, 7 Wall. 624, 640–642, as inconsistent with the series of decisions from *The Genesee Chief*, 12 How. 443, to *The Hine*, 4 Wall. 555, declaring the admiralty jurisdiction to extend over all navigable waters ; and was not followed in *The Eagle*, 8 Wall. 15, 21, in which the opinion was delivered by Mr. Justice Nelson. And, in so far as it rested on the suggestion of error in *The General Smith* and *The Planter*, or on the change in the twelfth rule, it was in effect overruled by *The St. Lawrence*, 1 Black, 522, and *The Potomac*, 2 Black, 581.

In the *St. Lawrence*, at December term 1861, this court adjudged that the rule of 1858 had no effect upon a libel filed

while the rule of 1844 was in force; and affirmed a decree against a vessel for supplies furnished in her home port, for which the statutes of New York gave a lien; and, in the opinion delivered by Chief Justice Taney, said that in the case of *The General Smith* " the court held that where, upon the principles of the maritime code, the supplies are presumed to be furnished upon the credit of the vessel, or where a lien is given by the local law, the party is entitled to proceed *in rem* in the admiralty court to enforce it " ; that that case was decided in 1819, and had ever since been followed and regarded as a leading case in the admiralty courts; that its authority had been recognized in the cases of *The Planter* and *The Orleans*, and other cases ; that while process against the vessel was denied in the case of *The General Smith*, because the laws of Maryland gave no lien or priority, it was used and supported in the case of *The Planter*, upon the ground that the party had a lien upon the vessel by the law of Louisiana, and as the contract was within its jurisdiction, it ought to give him all the rights he had acquired under it; and that " when this court framed the rules in 1844, it, of course, adhered to the practice adopted in the previous cases, and by the 12th rule authorized the process *in rem* where the party was entitled to a lien under the local or state law." 1 Black, 529, 530.  And the court treated the rules of 1844 and 1858 as mere regulations of procedure, under the power conferred upon this court by Congress, and liable to be changed from time to time, at the discretion of the court, as convenience might require, so far as regarded the future.

Although, as early as February term 1816, it had been assumed that the admiralty and maritime jurisdiction vested by the Constitution in the courts of the United States was exclusive, and could not be exercised by the courts of a State ; *Martin* v. *Hunter*, 1 Wheat. 304, 337, 373 ; yet the question whether a claim of a maritime nature could be enforced in the courts of a State by process *in rem* under a statute of the State, creating a right in the thing itself, and providing for its enforcement by process essentially like proceedings *in rem* in the admiralty, was not brought into judgment in this court

until December term 1866, when the question was directly presented in two cases, and was determined in the negative. *The Moses Taylor*, 4 Wall. 411; *The Hine*, 4 Wall. 555.

The case of *The Moses Taylor* arose under a statute of the State of California, enacting that claims against any vessel for supplies or materials furnished for her use or repair, and for breaches of contracts for transportation of persons or property, and certain other classes of claims, should constitute liens upon the vessel; that actions upon such claims might be brought directly against the vessel, and the summons served upon the master or any one in charge; that the vessel might be attached as security for the satisfaction of any judgment that might be recovered; and that if the attachment was not discharged, and a judgment was recovered, the vessel might be sold and the proceeds applied to the payment of the judgment. Upon a writ of error from this court to the highest court of the State to which the case could be taken, it was held that a contract for the transportation of a passenger upon an ocean voyage, relating exclusively to a service to be performed on the high seas, and pertaining solely to the business of commerce and navigation, was a maritime contract, and a breach of it an appropriate subject of maritime jurisdiction; and that the statute of the State, in so far as it authorized process *in rem* in the courts of the State against the vessel, was unconstitutional as interfering with the exclusive admiralty jurisdiction of the courts of the United States.

The case of *The Hine* arose under a statute of the State of Iowa, providing for similar proceedings in the courts of the State in the case of any injury to persons or property by a vessel, her officers or crew; and that statute, so far as it gave such process *in rem*, for a collision between two vessels, was held to be unconstitutional, under the decision in *The Moses Taylor*. Mr. Justice Miller, in delivering the opinion, declared it to be "the settled law of this court, that wherever the District Courts of the United States have original cognizance of admiralty causes, by virtue of the act of 1789, that cognizance is exclusive, and no other court, state or national, can exer-

cise it, with the exception always of such concurrent remedy as is given by the common law." 4 Wall. 568, 569.

. Each of those two cases was sought to be brought within the saving clause in section 9 of the Judiciary Act of 1789. As to which Mr. Justice Field, in *The Moses Taylor*, said : " That clause only saves to suitors ' the right of a common law remedy, where the common law is competent to give it.' It is not a remedy in the common law courts, which is saved ; but a common law remedy. A proceeding *in rem*, as used in the admiralty courts, is not a remedy afforded by the common law ; it is a proceeding under the civil law. When used in the common law courts, it is given by statute." 4 Wall. 431. And Mr. Justice Miller, in *The Hine*, said : " But the remedy pursued in the Iowa courts, in the case before us, is in no sense a common law remedy. It is a remedy partaking of all the essential features of an admiralty proceeding *in rem*. The statute provides that the vessel may be sued and made defendant, without any proceeding against the owners, or even mentioning their names ; that a writ may be issued and the vessel seized, on filing a petition similar in substance to a libel ; that after a notice in the nature of a monition, the vessel may be condemned and an order made for her sale, if the liability is established for which she was sued. Such is the general character of the steamboat laws in the western States. While the proceeding differs thus from a common law remedy, it is also essentially different from what are in the West called suits by attachment, and in some of the older States foreign attachments. In these cases there is a suit against a personal defendant by name, and because of inability to serve process on him on account of non-residence, or for some other reason mentioned in the various statutes allowing attachments to issue, the suit is commenced by a writ directing the proper officer to attach sufficient property of the defendant to answer any judgment which may be rendered against him. This proceeding may be had against an owner or part-owner of a vessel, and his interest thus subjected to a sale in a common law court of the State. Such actions may also be maintained *in personam* against a defendant in the common law courts,

as the common law gives; all in consistence with the grant of admiralty powers in the ninth section of the Judiciary Act. But it could not have been the intention of Congress, by the exception in that section, to give the suitor all such remedies as might afterwards be enacted by state statutes; for this would have enabled the States to make the jurisdiction of their courts concurrent in all cases, by simply providing a statutory remedy for all cases. Thus the exclusive jurisdiction of the Federal courts would be defeated." 4 Wall. 571, 572.

Again, at December term 1868, in the case of *The Belfast*, a statute of Alabama, giving a lien upon the vessel under a contract of affreightment, was held unconstitutional, so far as it provided for the enforcement of the lien in the courts of the State by proceedings *in rem* in the nature of proceedings in admiralty, because the lien of the shipper was a maritime lien, and, as was said by Mr. Justice Clifford in delivering the opinion, " authority does not exist in the state courts to hear and determine a suit *in rem* in admiralty to enforce a maritime lien "; " but in all cases where a maritime lien arises, the original jurisdiction to enforce the same by a proceeding *in rem* is exclusive in the District Courts of the United States, as provided in the ninth section of the Judiciary Act." 7 Wall. 624, 645, 646. The dictum uttered by the learned justice towards the end of the opinion, and afterwards repeated by him in *Leon* v. *Galceran*, 11 Wall. 185, 192, and in *Norton* v. *Switzer*, 93 U. S. 355, 365, that " such a lien does not arise in a contract for materials and supplies furnished to a vessel in her home port, and in respect to such contracts it is competent for the States, under the decisions of this court, to create such liens as their legislatures may deem just and expedient, not amounting to a regulation of commerce, and to enact reasonable rules and regulations prescribing the mode of their enforcement," if understood, as contended by the defendants in error, to imply that the States may authorize such liens to be enforced in their own courts by proceedings in the nature of admiralty process *in rem*, is unsupported by the decisions there referred to, or by any other decision of

this court, and is inconsistent with several recent opinions of this court, in which the subject was fully considered.

On May 6, 1872, this court ordered the twelfth rule in admiralty to be amended so as to read as follows: "In all suits by material men for supplies or repairs, or other necessaries, the libellant may proceed against the ship *in rem*, or against the master or owner alone *in personam*." 13 Wall. xiv.

This amendment of the rule left the law in this respect in the same condition in which, as declared by this court in cases above cited, it had been before the promulgation of any rule upon the subject.

In *The Lottawanna*, at October term 1874, the purpose and effect of the amendment were stated by Mr. Justice Bradley (who had taken part in making it) as follows: "As to the recent change in the admiralty rule referred to, it is sufficient to say that it was simply intended to remove all obstructions and embarrassments in the way of instituting proceedings *in rem* in all cases where liens exist by law, and not to create any new lien, which, of course, this court could not do in any event, since a lien is a right of property, and not a mere matter of procedure." "We have now restored the rule of 1844, or, rather, we have made it general in its terms, giving to material men in all cases their option to proceed either *in rem* or *in personam*. Of course this modification of the rule cannot avail where no lien exists; but where one does exist, no matter by what law, it removes all obstacles to a proceeding *in rem*, if credit is given to the vessel." *The Lottawanna*, 21 Wall. 558, 579, 581.

In *The Lottawanna*, this court allowed to a mortgage of a ship precedence over claims of material men in the home port, because they had no lien by the maritime law of the United States, as declared in the case of *The General Smith*, and because their claim had not been recorded as required by the law of the State of Louisiana, which gave them a lien. The decree of the District Court was rendered before the admiralty rule of 1858 was superseded by the rule of 1872. Mr. Justice Bradley, in delivering the opinion of this court, said: "Had

the lien been perfected, and had the rule not stood in the way, the principles that have heretofore governed the practice of the District Courts exercising admiralty jurisdiction, and which have been repeatedly sanctioned by this court, would undoubtedly have authorized the material men to file a libel against the vessel or its proceeds. It seems to be settled in our jurisprudence that, so long as Congress does not interpose to regulate the subject, the rights of material men furnishing necessaries to a vessel in her home port may be regulated in each State by state legislation. State laws, it is true, cannot exclude the contract for furnishing such necessaries from the domain of admiralty jurisdiction, for it is a maritime contract, and they cannot alter the limits of that jurisdiction; nor can they confer it upon the state courts so as to enable them to proceed *in rem* for the enforcement of liens created by such state laws, for it is exclusively conferred upon the District Courts of the United States." 21 Wall. 579, 580.

In that opinion, as appears by the passages above quoted, this court distinctly affirmed the following positions: First. The admiralty rule of 1872 was intended to remove all obstructions and embarrassments in the way of instituting proceedings *in rem* in all cases where liens exist by law. Second. A lien is a right of property, and not a mere matter of procedure. Third. Where a state statute has given to material men in the home port a lien upon the vessel, to be enforced by proceedings like those in admiralty, the District Courts of the United States have jurisdiction to enforce it by libel *in rem*. Fourth. Their jurisdiction *in rem*, in such a case, is exclusive of that of the courts of the State.

At the same term, a process *in rem* to enforce a lien given by a statute of New Jersey for building a ship was held to be within the jurisdiction of the courts of the State, solely because, as previously adjudged by this court, a contract for building a ship was not a maritime contract, but a contract made on land and to be performed on land, and therefore not a subject of admiralty jurisdiction. *Edwards* v. *Elliott*, 21 Wall. 532, 553–556; *The Jefferson*, 20 How. 393; *The Capitol*, 22 How. 129.

Likewise, in *Johnson* v. *Chicago & Pacific Elevator Co.*, de-

cided at October term 1886, the remedy given by the statute
of Illinois was *in personam*, and the cause of action was not a
maritime tort, but an injury done by a steam tug to a building
on land, of which an admiralty court of the United States
would have no jurisdiction; and, as was said by Mr. Justice
Blatchford in delivering judgment: " This being so, no reason
exists why the remedy for the wrong should not be pursued in
the state court, according to the statutory method prescribed
by the law of the State, even though that law gives a lien on
the vessel. The cases in which state statutes have been held
void by this court, to the extent in which they authorized suits
*in rem* against vessels, because they gave to the state courts
admiralty jurisdiction, were only cases where the causes of
action were cognizable in the admiralty." " There being no
lien on the tug, by the maritime law, for the injury on land
inflicted in this case, the State could create such a lien therefor
as it deemed expedient, and could enact reasonable rules for
its enforcement, not amounting to a regulation of commerce.
Liens under state statutes, enforceable by attachment, in suits
*in personam*, are of every-day occurrence, and may even extend
to liens on vessels, when the proceedings to enforce them do
not amount to admiralty proceedings *in rem*, or otherwise con-
flict with the Constitution of the United States. There is no
more valid objection to the attachment proceeding to enforce
the lien in a suit *in personam*, by holding the vessel by mesne
process to be subjected to execution on the personal judgment
when recovered, than there is in subjecting her to seizure on
the execution. Both are incidents of a common law remedy,
which a court of common law is competent to give." 119 U. S.
388, 397, 399.

In the case of *The J. E. Rumbell*, decided at October term
1892, since the first decision of the present case in the Supreme
Judicial Court of Massachusetts, this court, referring to many
of the cases above cited, stated the general principles of law
upon the subject now before us as follows :

" In the admiralty and maritime law of the United States,
as declared and established by the decisions of this court,
the following propositions are no longer doubtful: 1st. For

necessary repairs or supplies furnished to a vessel in a foreign port, a lien is given by the general maritime law, following the civil law, and may be enforced in admiralty. 2d. For repairs or supplies in the home port of the vessel, no lien exists, or can be enforced in admiralty, under the general law, independently of local statute. 3d. Whenever the statute of a State gives a lien, to be enforced by process *in rem* against the vessel, for repairs or supplies in her home port, this lien, being similar to the lien arising in a foreign port under the general law, is in the nature of a maritime lien, and therefore may be enforced in admiralty in the courts of the United States. 4th. This lien, in the nature of a maritime lien, and to be enforced by process in the nature of admiralty process, is within the exclusive jurisdiction of the courts of the United States, sitting in admiralty. The fundamental reasons on which these propositions rest may be summed up thus: The admiralty and maritime jurisdiction is conferred on the courts of the United States by the Constitution, and cannot be enlarged or restricted by the legislation of a State. No state legislation, therefore, can bring within the admiralty jurisdiction of the national courts a subject not maritime in its nature. But when a right, maritime in its nature, and to be enforced by process in the nature of admiralty process, has been given by the statute of a State, the admiralty courts of the United States have jurisdiction, and exclusive jurisdiction, to enforce that right according to their own rules of procedure." 148 U. S. 1, 11–13.

In that case, it is true, the single question presented for decision was whether a lien upon a vessel for necessary supplies and repairs in her home port, given by the statute of a State, and to be enforced by proceedings *in rem* in the nature of admiralty process, took precedence of a prior mortgage, recorded as required by act of Congress. But the decision of that question, as in the similar case of *The Lottawanna*, above cited, really depended upon the question whether the contract and the lien of the material men, on the one side, or those of the mortgagee, on the other, were in their nature maritime, and therefore entitled to be enforced *in rem* in a

court of admiralty. The conclusion of this court as to the nature of the claims respectively was that "the lien created by the statute of a State, for repairs or supplies furnished to a vessel in her home port, has the like precedence over a prior mortgage, that is accorded to a lien for repairs or supplies in a foreign port under the general maritime law, as recognized and adopted in the United States. Each rests upon the furnishing of supplies to the ship, on the credit of the ship herself, to preserve her existence and secure her usefulness, for the benefit of all having any title or interest in her. Each creates a *jus in re*, a right of property in the vessel, existing independently of possession, and arising as soon as the contract is made, and before the institution of judicial proceedings to enforce it. The contract in each case is maritime, and the lien which the law gives to secure it is maritime in its nature, and is enforced in admiralty by reason of its maritime nature only. The mortgage, on the other hand, is not a maritime contract, and constitutes no maritime lien, and the mortgagee can only share in the proceeds in the registry after all maritime liens have been satisfied." 148 U. S. 19.

The form of proceeding against the vessel, provided for in the statute of Massachusetts, now in question, is clearly in the nature of admiralty process *in rem*, and is undistinguishable from the proceedings, provided for in statutes of other States, which have been held by this court to be exclusively within the admiralty jurisdiction of the courts of the United States. The lien upon the vessel is created as soon as money is due for labor performed or materials furnished, and continues until the debt is satisfied, unless the lien is dissolved by failure to record a statement of the claim, as required by the statute; the petition is to be served by an attachment of the vessel, and a summons to the owners, if known; a dissolution of the attachment does not dissolve the lien; and any number of persons having such liens upon the same vessel may join in one petition to enforce them. Mass. Pub. Stat. c. 192, §§ 14–19.

In conclusion, the considerations by which this case must be governed may be summed up as follows: The maritime

and admiralty jurisdiction conferred by the Constitution and laws of the United States upon the District Courts of the United States is exclusive. A lien upon a ship for repairs or supplies, whether created by the general maritime law of the United States, or by a local statute, is a *jus in re*, a right of property in the vessel, and a maritime lien, to secure the performance of a maritime contract, and therefore may be enforced by admiralty process *in rem* in the District Courts of the United States. When the lien is created by the general maritime law, for repairs or supplies in a foreign port, no one doubts at the present day that, under the decisions in *The Moses Taylor* and *The Hine*, 4 Wall. 411, 555, above cited, the admiralty jurisdiction *in rem* of the courts of the United States is exclusive of similar jurisdiction of the courts of the State. The contract and the lien for repairs or supplies in a home port, under a local statute, are equally maritime, and equally within the admiralty jurisdiction, and that jurisdiction is equally exclusive.

The necessary result is that the petition ought to have been dismissed; but, in accordance with the usual practice upon reversing a judgment of the highest court of a State, the proper form of judgment is

> *Judgment reversed, and case remanded for further proceedings not inconsistent with the opinion of this court.*

Mr. Justice Brewer did not hear the argument or take any part in the decision of this case.